**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | |
| | : | **NO. 10-170** |
| **RALPH J. CAMACHO** | : | |

DuBois, J.                                                                                                                                                                          December 6, 2010

**M E M O R A N D U M**

**I.    INTRODUCTION**

      Defendant Ralph J. Camacho ("Camacho") is charged in a seven-count Indictment with distribution of marijuana, in violation of 21 U.S.C. § 841(a)(1); four counts of possession with intent to distribute controlled substances, also in violation of § 841(a)(1); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Presently before the Court are three motions: Government's Motion <u>In Limine</u> to Limit Cross Examination of the Government's Witnesses Pursuant to FRE 609 ("Motion to Limit"); Government's Motion <u>In Limine</u> to Admit Prior Convictions Pursuant to 609(a) ("Motion to Admit"); and United States' Motion <u>In Limine</u> to Introduce Evidence of Other Acts Pursuant to Fed. R. Evid. 404(B) ("Motion to Introduce 404(b) Evidence"). For the reasons that follow, the Motion to Limit is granted, the Motion to Admit is denied, and the Motion to Introduce 404(b) Evidence is granted in part and denied in part.

## II. BACKGROUND[1]

On December 8, 2009, a confidential informant ("CI") told Bensalem Township police that he had purchased marijuana earlier that day at a nearby motel from a man named "Tim" – later identified as Camacho. (Mot. to Introduce 404(b) Evidence at 2.) The CI then returned to the motel with an undercover officer, who purchased a bag of marijuana from Camacho. (Id.) As the pair left the motel, other law enforcement officers entered and arrested Camacho and a civilian witness who had been sleeping in the room. (Id. at 2-3.) The officers obtained a search warrant for the room. (Id. at 3.) During their subsequent search, they found various illegal controlled substances, including marijuana, cocaine, crack cocaine and fentanyl; a stolen, loaded 9-mm handgun; $6,733 in cash; and the $80 of buy money the undercover officer used. (Id.)

Camacho was taken to Bensalem Township Police headquarters where he admitted to police that he sold drugs and had been doing so since February or March 2009. (Id.) More specifically, he said he had sold drugs to four or five customers a total of about 100 times during that span of time. (Id.)

Officers later interviewed the civilian witness, who told police: (1) the first time she met Camacho, he gave her heroin; (2) the two were romantically involved and lived together for two weeks prior to Camacho's arrest; (3) she observed Camacho sell or give drugs to people on many occasions; (4) she observed that Camacho kept drugs and two handguns in the cabinet of his trailer and identified one of the guns as the one seized from the motel room; (5) she observed that Camacho always had the gun with him for his protection during the two weeks the pair lived

---

[1] As Camacho has not contested any of the factual material in the Government's motions, the facts are presented in this Memorandum as stated by the Government. This does not, of course, preclude Camacho from contesting any of these facts in future motions or at trial.

together; and (6) she observed him with the gun in the motel room before he was arrested. (Id. at 3-4.)

Officers also had further discussions with the CI, who told police: (1) the CI and Camacho first met in June 2009; (2) the CI purchased drugs from Camacho at their first meeting; and (3) the CI purchased drugs from Camacho many times thereafter. (Id.)

## III.   MOTION TO LIMIT

In its Motion to Limit, the Government seeks to prevent Camacho from cross-examining the CI about the CI's juvenile criminal history. The Government acknowledges that its CI was arrested as a juvenile in 2005 and charged with drug possession, drug paraphernalia possession and possession of an alcoholic beverage by a minor. (Mot. to Limit at 2.) Most of the charges were dismissed. (Id.) The CI received a deferred disposition on the remaining charge – possession of marijuana/hash – and successfully completed a one-year diversion program. (Id.) He was then found not guilty on that charge. (Id.)

The Government argues that neither the arrest nor the deferred disposition should be admissible at trial to impeach the CI under Fed. R. Evid. 609 ("Rule 609") because, inter alia, neither is a conviction. The Government is correct, and the Court accordingly grants the motion.

Rule 609 provides the standard for the use of prior convictions for impeachment purposes. Under the rule:

> For the purpose of attacking the character for truthfulness of a witness, . . . evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted. . . .

Fed. R. Evid. 609(a)(1) (emphasis added). A deferred adjudication is not a conviction. See

United States v. Hamilton, 48 F.3d 149, 153 (5th Cir. 1995). Neither is an arrest. See Medrano v. City of Los Angeles, 973 F.2d 1499, 1507 (9th Cir. 1992). Therefore, the CI's arrest and deferred disposition are not admissible for impeachment purposes under Rule 609, and the Motion to Limit is granted.

### IV. MOTION TO ADMIT

In its Motion to Admit, the government argues that it should be able to cross-examine Camacho (if he chooses to testify) about his prior narcotics and firearms convictions. Camacho was convicted in state court in 2003 of carrying a firearm in a public place and carrying a firearm without a license, both felonies. (Mot. to Admit at 2.) In 2004, he was convicted in state court on felony narcotics and conspiracy charges. (Id.)

The government argues that these convictions should be admissible to impeach Camacho because they occurred within the past ten years, see Fed. R. Evid 609(b), and bear strongly on his credibility. Camacho urges that the convictions are too similar to the charges in this case and are thus likely to be highly prejudicial, even if the Court issues a limiting instruction. The Court concludes that Camacho is correct and denies the motion.

A. Legal Standard: Rule 609(a)(1)

Rule 609, which governs the use of convictions for impeachment, provides:

> For the purpose of attacking the character for truthfulness of a witness, . . . evidence that an accused has been convicted of [a crime punishable by death or imprisonment in excess of one year] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused.

Fed. R. Evid. 609(a)(1).

According to the Third Circuit, "Rule 609(a)(1) is absolutely clear and explicit in

requiring the trial court, before admitting evidence of a prior conviction [of the accused], to make a determination that the probative value of the evidence outweighs its prejudicial effect to the defendant." Gov't of the Virgin Islands v. Bedford, 671 F.2d 758, 761 (3d Cir. 1982). In making this determination, a court should consider the following four factors: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the case; [and] (4) the importance of the credibility of the defendant." Id. at 761 n.4. The government bears the burden of demonstrating that the probative value of the prior conviction outweighs its prejudicial effect. Id. at 761. Prior convictions of crimes that are the same or similar to the ones charged are "admitted sparingly." 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 609.05[3][d] (2d ed. 2010).

B. Analysis

Camacho's previous convictions are for drug and gun possession, basically the same crimes charged in this case. Even assuming, arguendo, that the other three Bedford factors favor the government, the similarity of the crimes charged is enough to render their use for impeachment under Rule 609 inappropriate. When the prior conviction and crime charged are the same or practically the same, there is "inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'" United States v. Cherry, No. 10-CR-091, 2010 WL 3156529, at *6 (E.D. Pa. Aug. 10, 2010) (quoting Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967)). Thus, the Court concludes that the probative value of admitting this evidence is outweighed by the prejudicial effect to Camacho and accordingly denies the motion.

## V. MOTION TO INTRODUCE 404(b) EVIDENCE

In its Motion to Introduce 404(b) Evidence, the government asks that it be allowed to introduce seven pieces of evidence of alleged prior bad acts:

> (1) Camacho's admission to police that he sold drugs;
> (2) The CI's testimony that he bought drugs from Camacho on the day of the alleged illegal activity in this case and previously bought drugs from Camacho;
> (3) Civilian witness testimony that Camacho gave the witness heroin and that the witness observed Camacho sell drugs on many occasions;
> (4) Civilian witness testimony that the witness observed Camacho always in possession of the gun seized by police in this case, that the witness saw Camacho with the gun on the date when and in the location where he was arrested and that Camacho talked to the witness concerning his possession of the gun;
> (5) Evidence that the gun was stolen;
> (6) Camacho's conviction in January 2004 for a felony controlled substance violation; and
> (7) Camacho's conviction for carrying a firearm on the street and carrying a firearm without a license.

For each piece of evidence, the government proffers reasons the evidence is admissible other than "to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b) ("Rule 404(b)"). For example, the government avers that much of the evidence about Camacho's history with drug dealing shows ownership of the drugs seized, intent to sell and a lack of mistake. Camacho contends that most of the offered evidence is irrelevant, offered for an improper purpose under Rule 404(b) and/or unduly prejudicial under Federal Rule of Evidence 403 ("Rule 403"). He does not make any argument in opposition to introduction of evidence that the gun was stolen. The Court concludes that all of the evidence is admissible, except for the two convictions.

A. Legal Standard: Rule 404(b), Rule 403

Rule 404(b) states, in part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

In the Third Circuit, courts employ the following four-part test to evaluate the admissibility of evidence under Rule 404(b):

> Evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it.

United States v. Green, 617 F.3d 233, 249 (3d Cir. 2010). A proper purpose exists where the evidence is "probative of a material issue other than character." Id. at 250 (quoting Huddleston v. United States, 485 U.S. 681, 686 (1988)). This means the evidence "must fit 'into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.'" Id. (quoting United States v. Himelwright, 42 F.3d 777, 782 (3d Cir. 1994)).

In the third step of the Rule 404(b) analysis, a court must evaluate the evidence under Rule 403. Rule 403 bars the introduction of evidence where its "probative value is substantially outweighed by the danger of unfair prejudice." Several factors are relevant in the weighing process, including: (1) the need for the evidence in light of the contested issues and the other evidence available to the prosecution, (2) the strength of the evidence and (3) the danger the evidence will inflame the jury and lead to a decision on an improper basis. United States v.

Sriyuth, 98 F.3d 739, 748 (3d Cir. 1996) (quoting United States v. Cook, 538 F.2d 1000, 1003 (3d Cir. 1976)). "[A] significant danger of undue prejudice will be found to exist where there are 'substantial possibilities . . . that a jury will harbor strong adverse sensitivity' to the challenged evidence. In order to overcome this significant risk of unfair prejudice, the government must prove necessity." Id. (quoting Cook, 538 F.2d at 1003).

B. Analysis

1. *Camacho's Admission That He Sold Drugs*

On the day he was arrested, Camacho admitted to police that he had been selling drugs during the nine months leading up to his arrest. The defense argues that these admissions are either irrelevant or unduly prejudicial. Neither argument is persuasive.

The admissions are clearly relevant to several issues crucial in a drug distribution case, including ownership of the drugs seized, knowledge of their presence and intent to distribute. The substantial probative value of statements about Camacho's contemporaneous and recent drug-related activities is not substantially outweighed by the risk that the jury will use the admission for an improper purpose. Thus, Camacho's statements will be admitted.[2]

2. *CI's Testimony About Buying Drugs From Camacho*

The government seeks to offer testimony from the CI that he bought drugs from Camacho both on the day Camacho was arrested and on previous occasions. The testimony regarding the drug purchase on December 8, 2009 is admissible as "intrinsic evidence" – that is, it provides direct proof of one of the charged offenses, distribution of marijuana. See Green, 617 F.3d at

---

[2] This ruling is subject to reconsideration should Camacho file a Motion to Suppress his statements.

248. This testimony also raises no problems under Rule 403.

The testimony of earlier drug transactions is relevant to provide context and credibility to the CI's statements and explain his relationship with Camacho. See United States v. Scarfo, 850 F.2d 1015, 1020 (3d Cir. 1988). The testimony about past drug deals also would tend to show lack of mistake and intent to distribute. See United States v. Hodge, 85 Fed. Appx. 278, 280 (3d Cir. 2003).

While there is some possibility that the testimony about past drug deals may be used for an improper purpose, such as propensity, this possibility does not substantially outweigh the probative value of the evidence. All of the alleged earlier transactions between the CI and Camacho occurred within about six months of Camacho's arrest. Testimony about those transactions therefore is relatively strong evidence both of the ongoing relationship between the CI and Camacho and of Camacho's knowledge and intent on the day of his arrest. Thus, because the probative value of testimony about drug transactions between the CI and Camacho is not substantially outweighed by the danger of unfair prejudice, the testimony will be admitted.

### 3. *Civilian Witness' Testimony About Drugs*

The civilian witness who was with Camacho when he was arrested would testify that he gave her heroin the first time they met and that she observed him giving or selling drugs to others on many occasions. This testimony is admissible to provide context for the relationship between Camacho and the civilian witness, see Scarfo, 850 F.2d at 1020, and to show intent and a lack of mistake with respect to the seized drugs. See Hodge, 85 Fed. Appx. at 280.

The parties' briefing does not reveal exactly when each alleged transaction occurred, but the civilian witness told police that she was living with Camacho during the two weeks leading

up to his arrest. Their relationship, therefore, was ongoing, and the incidents were part of a course of conduct leading up to the day of the arrest. This evidence is highly probative, and the probative value is not substantially outweighed by the danger of it causing unfair prejudice. Thus, the evidence will be admitted.

4. *Civilian Witness Testimony About the Gun*

The civilian witness would testify that Camacho was consistently in possession of the gun that was seized during the two weeks before its seizure, that she saw him in possession of the gun in the motel room where the alleged drug sales took place and that Camacho made statements admitting he kept the gun for protection.

All of this testimony provides intrinsic evidence relevant to the two gun counts. See Green, 617 F.3d at 248. Evidence that Camacho possessed the gun is admissible to establish an element of the felon-in-possession charge. Evidence that he possessed it in the same room where the alleged drug sales took place is admissible to establish that he possessed the gun in aid of trafficking. The probative value of this evidence is not substantially outweighed by its danger of unfair prejudice. Thus, the testimony will be admitted.[3]

5. *Evidence That the Gun Was Stolen*

The Government also seeks to produce evidence that the gun was stolen. This is not evidence of a prior act (or any act at all) by Camacho, but rather circumstantial evidence that the gun was used "in furtherance" of drug trafficking. The Third Circuit has held that a jury can consider whether a gun was stolen in determining whether the gun was possessed "in

---

[3] The testimony also would be admissible under Rule 404(b), as it is admissible to establish knowledge, intent and absence of mistake.

furtherance" of a drug trafficking crime under 18 U.S.C. § 924(c)(1). United States v. Sparrow, 371 F.3d 851, 853 (3d Cir. 2004). Camacho has presented no reason why this evidence would be unduly prejudicial under Rule 403, and the Court finds that the probative value of the evidence is not substantially outweighed by the danger it will cause unfair prejudice. Thus, it, too, will be admitted.

      6. *The Two Convictions*

The government argues that Camacho's 2003 conviction for illegal gun possession and 2004 conviction on drug charges should be admitted, as they tend to demonstrate, inter alia, intent to distribute and an absence of mistake. Camacho argues that the evidence simply is being introduced to show propensity and would be unduly prejudicial.

The government has articulated permissible purposes for the evidence to be introduced. Camacho's familiarity with narcotics and weapons makes it less likely he possessed them unknowingly or with innocent intent. This is a non-propensity basis for admission. See United States v. Givan, 320 F.3d 452, 461 (3d Cir. 2003) ("Knowledge, intent, and lack of mistake or accident are well-established non-propensity purposes for admitting evidence of prior crimes or acts.").

However, before admitting the convictions, the Court must perform the weighing required by Rule 403, using the Sriyuth factors. First, the government's need for the evidence is minimal. Though Camacho's knowledge and intent will be issues at trial, the government has other avenues available to it in making its case. For example, Camacho's statements that he was engaged in drug dealing at the time of his arrest is evidence of his intent to distribute drugs. Second, because of their age, the convictions are not particularly strong evidence of Camacho's

-11-

knowledge and intent on the day he was arrested. Third, there is substantial danger that the jury will use the convictions for an improper purpose. As noted above, when there is evidence presented that the accused has been convicted of the same or a similar crime, there is "inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'" Cherry, 2010 WL 3156529, at *6 (quoting Gordon, 383 F.2d at 940). The Court concludes that the probative value of the convictions is substantially outweighed by the danger they will cause unfair prejudice. Thus, evidence of the two convictions will not be admitted.

    C. Limiting Instructions

To the extent the Court has granted the Government's Motion to Introduce 404(b) Evidence, the defense is granted leave to seek limiting instructions. That should be done at trial.

## VI. CONCLUSION

For the foregoing reasons, the Motion to Limit is granted, the Motion to Admit is denied, and the Motion to Introduce 404(b) Evidence is granted as to all pieces of evidence except for Camacho's two convictions and denied as to the two convictions. An appropriate order follows.